UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN GREGO, | No. 2:15-cv-00458-TLN |
| Appellant, | **ORDER** |
| v. | |
| PACIFIC WESTERN BANK, | |
| Appellee. | |

The matter is before this Court on Glenn Grego's ("Appellant") appeal of an order of the United States Bankruptcy Court for the Eastern District of California. (Bardwil, J., Case No. 12-20064, ECF No. 204.) For the reasons discussed below, the order of the bankruptcy court is AFFIRMED.

**I. Background**

On review of the briefs submitted in this Court (ECF Nos. 11, 15, 19) and the bankruptcy court's statement of the facts in its written ruling (ECF No. 16-1 at 11–17), the Court states the following background.[1]

Appellant had an interest in commercial real property known as the Mariner's Inn, in

---

[1] The Court has relied in part upon Appellee's briefing for a statement of the facts because Appellant's briefing is hard to understand.

1

1  Cambria, California, over which the San Luis Obispo County Superior Court appointed a receiver
2  in late January 2011.  A few days later, Appellant filed his first bankruptcy case in the United
3  States Bankruptcy Court for the Central District.  The receiver did not give up control of the
4  Mariner's Inn until ordered to do so by the Central District bankruptcy court.  Appellant then
5  retook possession of the Inn, as a debtor in possession, 11 U.S.C. § 1101.  But Appellant lost
6  possession on March 30, 2011, when the court *sua sponte* appointed a trustee in his bankruptcy
7  case, which was converted to a chapter 7 liquidation nearly a year later, on February 28, 2012.
8  (ECF No. 15 at 11.)  Appellant received a chapter 7 discharge in his first bankruptcy case in
9  September 2012.  (ECF No. 15 at 11.)

10  Appellant "believed that the receiver had violated the automatic stay in bankruptcy and
11  committed torts…."  (ECF No. 15 at 11.)  On April 11, 2013, the Central District bankruptcy
12  court signed an order of abandonment, thus "restoring to [Appellant] control of claims for
13  violating the automatic stay, conversion, trespassing, and claims against his insurance company
14  for damages caused by the Receiver during the occupancy and for the disappearance of lists of
15  personal property unrelated to the business and unrelated to any collateral interest held by the
16  former San Luis Trust Bank, which was seized by the FDIC for corrupt banking practices on
17  February 18, 2011."  (ECF No. 11 at 6–7.)  In other words, the "claims against the receiver thus
18  ceased to be property of [Appellant's] estate and once again became his own property."  (ECF
19  No. 15 at 12–13.)

20  However, a receiver is an officer of the appointing court and may not be sued without that
21  court's permission.  *Vitug v. Griffin*, 214 Cal. App. 3d 488, 492 (1989); Cal. Code Civ. P. § 568.
22  Appellant thus "pursued an application for authorization to file an action against the former court-
23  appointed Receiver…."  (ECF No. 11 at 7–8.)  The San Luis Obispo Superior Court granted that
24  authorization on January 22, 2014, and subsequently Appellant filed suit against the receiver in
25  San Luis Obispo Superior Court, Case No. CV128369.  (ECF No. 15 at 12.)  That lawsuit also
26  "includes within it claims for the loss of Plaintiff's homestead … [due to the Receiver's] fail[ure]
27  to make mortgage payments from Plaintiff had been making, causing foreclosure to occur…."
28  (ECF No. 11 at 8–9; ECF No. 15 at 12.)

To protect other real estate Appellant owned, Appellant eventually filed a second bankruptcy case (the current case) on January 3, 2014, prior to bringing suit against the receiver in Superior Court. (ECF No. 15 at 12.) In his amended schedule for the current bankruptcy, Appellant claimed as exempt the state court lawsuit against the receiver,[2] and specifically the following items: 1) an "unlimited" amount under 11 U.S.C. § 362(b)(4), which provides for the government's policing and regulatory power to enforce a judgment; 2) an "unlimited" amount under CCP § 704.140(b), which exempts personal injury damages or settlements to the extent necessary for the support of the debtor and his family; and 3) $150,000 under CCP § 704.720, which provides for homestead exemptions. (*See* Schedule C – Property Claimed as Exempt, ECF No. 16-1 at 1.)

Appellee Pacific Western Bank ("Appellee") objected to these exemptions, and the court sustained those objections by written ruling dated February 18, 2015. (ECF No. 16-1 at 11–17.) That ruling has been appealed to this court.

**II. Standard of Law**

The Court "reviews the bankruptcy court's findings of fact by the clearly erroneous standard of Fed. R. Civ. P. 52(a). But the bankruptcy court's conclusions of law are subject to *de novo* review." *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 429 (9th Cir. 1984) (citing *In re Comer,* 723 F.2d 737, 739 (9th Cir. 1984)) (internal citation omitted).

**III. Analysis**

Appellant raises four arguments in his opening brief. Most of these arguments were considered by the bankruptcy court.[3]

First, Appellant argues the state court's authorization of litigation against the receiver represents an act pursuant to the police power of the state court, beyond the jurisdiction of the

---

[2] The Court will hereinafter refer to the action against the receiver as the "state court" lawsuit or litigation. Apparently that lawsuit, Case No. 128369, was consolidated with two other cases involving the same or overlapping facts, Case Nos. 138142 and 0032. (ECF No. 11 at 6; ECF No. 16-1 at 12.)

[3] Appellant also argues, in the "issues to be presented in this Appeal" section of his opening brief, that the order of abandonment issued by the Central District bankruptcy court caused any state court litigation against the receiver to become Appellant's property. That appears to be correct. However, the issue here is whether that state court litigation is the property of the estate formed by his current bankruptcy proceeding that was opened on January 3, 2014. (ECF No. 11 at 9; ECF No. 15 at 16.)

bankruptcy court. *See* 11 U.S.C. § 362(b)(4).  The Court presumes a stay was imposed under § 362(a), upon the filing of the current bankruptcy in January, 2014.  However, under subsection (b)(4), said stay "does not operate as a stay" relative to:

> the commencement or continuation of an action or proceeding by a governmental unit … to enforce such  governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

As stated by the bankruptcy court: Appellant argues that his state court litigation was "part of the superior court's exercise of its police and regulatory power to supervise the actions of and require accountings from an individual the court has appointed as a receiver." (ECF No. 16-1 at 12–13.)  The bankruptcy court rejected that argument because the power described in § 362(b)(4) does not concern exemption or questions of what is property of the estate.  (ECF No. 16-1 at 12.) Appellant challenges this conclusion, but cites no authority on appeal that would contravene this plain reading of the statute.

For example, "the terms 'police or regulatory power' as used in those exceptions [§ 362(b)(4) and (5)] refer to the enforcement of state laws affecting health, morals, and safety but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 591 (9th Cir. 1993). Appellant argues there is a "public purpose aspect" of the state court litigation, because "[a]mong the many allegation of the [state court complaint] … this Receiver employed individuals who used the facilities to consume illegal drugs; forge checks made out to Plaintiff's father who was deceased; ordered drugs online using Plaintiff's identity," and other illegal actions.  (ECF No. 11 at 11.)  However, even if these acts were to fall within "state laws affecting health, morals, and safety," Appellant provides no authority finding that § 362(b)(4) provides for an *exemption* of the state court lawsuit from his bankruptcy proceeding.  *Hillis*, 997 F.2d at 591.  As the bankruptcy court stated, that section pertains to the automatic stay that occurs in chapter 11 bankruptcy proceedings and is not applicable to exemption.  (ECF No. 16-1 at 12.)

Appellant argues further that the term 'exemption' is neither here nor there.  (ECF No. 19

at 5.) Rather, he argues that the state court-appointed receiver stole items that were outside of his authority to possess and control the property, including "comic books, fishing boats, paintings, diamonds, diamond rings, crystals, and baseballs autographed by Babe Ruth and Lou Gehrig." (ECF No. 19 at 4.) "The Superior Court having appointed the receiver who thereafter stole everything that was not nailed down would naturally want to review an accounting from that same receiver which was not previously forthcoming and was only forthcoming by Order of the Court in the exercise of its police or regulatory power." (ECF No. 19 at 5.) However, this Court is evaluating the bankruptcy court's conclusion that Appellant's state court suit is not subject to exemption under § 362(b)(4), which was the stated basis for exemption on Appellant's amended schedule.[4] Appellant does not cite authority finding this set of circumstances to entitle him to an exemption under some other statute invoking the police or regulatory power involved in a civil action for trespass, conversion, etc. The Court finds no legal error in the bankruptcy court's conclusion that the claimed exemption was not available.

Second, Appellant argues that because he filed the state court action after he filed for his current bankruptcy, that action is not property of the estate. *See* 11 U.S.C. § 541(a)(1) ("Such estate is comprised of all the following property, wherever located and by whomever held: … [e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case"). (ECF No. 11 at 12.) Appellant argues that "the factual predicate of the events," i.e. the receiver's tortious acts, occurred prior to his filing the instant bankruptcy. (ECF No. 11 at 12.) However, authorization to sue the receiver did not occur until after he filed for bankruptcy.[5]

In response, Appellee cites the following authorities: "a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy … To determine when a cause of action accrues, we look to state law." *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001). "The rule requiring court permission to sue a receiver stems from Code of Civil Procedure section 568.

---

[4] Appellant states there is no other location within the schedules in which such a claim could be made.

[5] As stated *supra*, Appellant received authorization to sue the receiver on January 22, 2014; he filed his current bankruptcy prior to that, on January 3, 2014. (ECF No. 15 at 12.)

That section empowers a receiver to bring and defend actions as a receiver, but only under the control of the court … Since the underlying purpose of the rule is simply to accommodate all claims, if possible, in the receivership action under the supervision of the appointing court, it follows that the permission requirement is not a jurisdictional one…." *Vitug,* Cal. App. 3d at 492–93 (internal quotation marks and citations omitted). "[F]ailure to obtain leave to sue is not jurisdictional, and failure to obtain is an irregularity which may be cured at any stage of the proceedings. ... When the court gives permission to sue, it may grant such permission as of the time of the commencement of the action." *Id.* at 1293 (internal quotation marks and citations omitted).

Based on the foregoing, Appellant could receive authorization to sue the receiver at any point during the state court proceeding, which would involve a time period much greater than the three week gap between his filing for bankruptcy (January 22, 2014) and his receiving authorization to sue (January 3, 2014). Other than the right to sue, Appellant does not dispute that the causes of action in his state court litigation accrued by virtue of the receiver's alleged torts being committed prior to the filing of his current bankruptcy. Nor has Appellant refuted the above-stated authorities cited by Appellee. However, the authorities cited on this point by Appellant discuss the function of a state court-appointed receiver, but not relative to the timing of whether a lawsuit against a receiver becomes subject to a bankruptcy proceeding. *See City of Chila Vista v. Gutierrez*, 207 Cal. App. 4th 681 (2012); *City of San Monica v. Gonzalez*, 43 Cal. 4th 905 (2008); *McCarthy v. Poulsen*, 173 Cal. App. 3d 1212 (1985). Without more, the Court finds the timing of when Appellant received authorization to bring suit against the receiver does not exempt that suit from Appellant's current bankruptcy, nor does the timing entail that the state court suit is not property subject to the current bankruptcy.

Third, Appellant directs the Court to CCP § 704.140(b), which permits the exemption of an award of damages or a settlement based on personal injury to the extent necessary for the support of the debtor and his family. Appellant argues: "[g]iven the fact that [he] has been deprived of the majority of his assets, there is at least a presumption that there are portions of this lawsuit which are necessary for his support." (ECF No. 11 at 14.)

On this issue, the bankruptcy court cited *Haaland v. Corp. Mgmt., Inc.*, 172 B.R. 74, 77 (S.D. Cal. 1989), which has discussed:

> The California Law Revision Commission, in proposing [§ 704.140], noted that the then existing law provided exemptions for insurance benefits for personal injury or death but did not exempt settlements or awards for the personal injury of a judgment debtor. The Commission suggested that the existing law be amended to exempt settlement or damage awards as it exempted insurance benefits.
>
> …
>
> The language of § 704.140 itself reinforces that the section was directed to bodily injury. Subsection (c) addresses the situation where the creditor is the health care provider who provided 'health care for the personal injury.' This infers that the legislature contemplated bodily injury rather than other types of injury such as loss of property.  Further, subsection (b) states that the award or settlement is exempt only 'to the extent necessary for the support' of the debtor and his family.  This implies an intent to provide support to a debtor unable to work due to physical disability.

Thus, the bankruptcy court found the damages sought by Appellant in the state court suit – for conversion, trespassing, theft, emotional distress etc. – do not fit within the § 704.140(b) exemption.  The bankruptcy court also addressed the emotional distress damages claimed by Appellant, and found that "the definition of emotional distress to include the debtor's distress over losing his money and property … would extend the statute to virtually any type of property loss at all." (ECF No. 16-1 at 14.)  Appellant cites *In re Sylvester*, 220 B.R. 89, 93 (B.A.P. 9th Cir. 1998), which held that personal injury can include emotional distress.  However, Appellant does not make a tenable argument on appeal that his emotional distress damages fall within § 704.140's "intent to provide support to a debtor unable to work due to physical disability." *Haaland*, 172 B.R. at 77.  The crux of Appellant's state court action appears to be the conversion of property and related torts.  Therefore, the Court finds no legal error in the bankruptcy court's conclusions regarding an exemption under § 704.140(b).

Fourth, Appellant argues he is entitled to an exemption under CCP § 704.720, which provides for homestead exemptions.[6]  "A 'Homestead' means the principal dwelling (1) in which

---

[6] Section 704.720(a) and (b) provide:

the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." CCP § 704.710(c). The relevant issue, as noted by the bankruptcy court, is whether proceeds of a homestead may be exempt under § 704.720.

Appellant argues: "the proceeds of the residence previously occupied as his primary residence at 6189 Brighton Lane in Cambria were unlawfully seized through foreclosure, even though the Debtor/Appellant was not in default." Appellant further states: "[The exemption he seeks] refers back to the Debtor's claim that he was not in default when he was declared to be in default by a corrupt bank." *See infra,* n. 7. Appellant does not give further explanation of this foreclosure, which apparently did not involve the property that was possessed by the receiver. The bankruptcy court provided the following analysis:

> It is a 'well settled rule that a property cannot be exempted unless it is first property of the estate.' *Rains v. Flinn* [], 428 F.3d 893, 906 (9th Cir. 2005). In the portion of the lawsuit directed against the Bank, the debtor claims the Bank wrongfully foreclosed on his residence … [which is] … a different property from the one that was the subject of the receivership … The property that was apparently the debtor's homestead was foreclosed on several years ago through a sale that generated no surplus proceeds over and above the amount due the bank. Thus, the property itself is not property of the estate and there have never been any proceeds that could have come into the estate. In other words, so far as a homestead or proceeds of a homestead that might be exempt under § 704.720, none exist in this case. What is property of the estate is the cause of action for wrongful foreclosure; that is, a claim for damages. In other words, what might be recovered on account of the claim, if anything, is money damages, not proceeds of the

---

(a) A homestead is exempt from sale under this division to the extent provided in Section 704.800.

(b) If a homestead is sold under this division or is damaged or destroyed or is acquired for public use, the proceeds of sale or of insurance or other indemnification for damage or destruction of the homestead or the proceeds received as compensation for a homestead acquired for public use are exempt in the amount of the homestead exemption provided in Section 704.730. The proceeds are exempt for a period of six months after the time the proceeds are actually received by the judgment debtor, except that, if a homestead exemption is applied to other property of the judgment debtor or the judgment debtor's spouse during that period, the proceeds thereafter are not exempt.

8

> foreclosure sale. The exemption statute on which the debtor relies, § 704.720, does not provide for the exemption of money damages or a claim for money damages as a result of wrongful foreclosure.

Defendant has not cited any authority on appeal that contravenes this analysis, or given any more clarity on the nature of this foreclosure which apparently occurred several years before Appellant's filing for the current bankruptcy in January 2014. *See In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012) ("bankruptcy exemptions are fixed at the time of the bankruptcy petition"). Without more, the Court is unable to find the bankruptcy court made an inaccurate factual finding or a legal error.

In his reply brief, Appellant also argues that Appellee, Pacific Western Bank, has no standing to object to the instant claims of exemption. Appellant argues: "Appellee can present no documents known to Appellant/Debtor to justify recognizing the bank as a party or a creditor or claimant of the Appellant/Debtor to validate its claim." (ECF No. 19 at 6.) Appellant also appears to argue that Appellee's counsel in the proceeding before this Court and the current bankruptcy court also represents the receiver in the state court litigation; thus, Appellee wants to ensure Appellant does not receive an exemption for the state court litigation. (ECF No. 19 at 4.)

Frankly, the Court does not find clarity in Appellant's argument that Appellee lacks standing to assert these objections. The bankruptcy court apparently did not consider whether Appellee lacked standing to object to Appellant's claimed exemptions. Appellant appears to be arguing that Appellee asserts standing as a creditor due to acquiring an interest in an "Order of Coercive Sanctions" issued against Appellant in a proceeding prior to the current bankruptcy. Appellant states this assertion of standing is wrong. Appellant has attached several hundred pages of documents, including filings in his state court litigation, filings from his Central District bankruptcy, and a "Purchase and Assumption Agreement between FDIC, Receiver of San Luis Trust Bank and First California Bank." (ECF Nos. 12, 12-1, 12-2, and 19-1.) However, the Court is not able to parse Appellant's convoluted arguments and vague references to attached exhibits to consider whether Appellee has standing and what the relevant issues are.[7]

---

[7] Appellant argues (ECF No. 19 at 6–7):

> Appellee can present no document known to Appellant/Debtor to justify

Regardless of which creditor were to object to Appellant's claimed exemptions, the Court finds no legal error in the bankruptcy court's findings that under the statutes cited by Appellant in his amended schedule – 11 U.S.C. § 362(b)(4), CCP § 704.720, and CCP § 704.140(b) – the claimed exemptions are not viable.

**IV.  Conclusion**

- For the foregoing reasons, the order of the bankruptcy court – ECF No. 204, Case No. 12-20064 – is AFFIRMED.
- The Clerk of this Court is directed to close this case.

Dated: March 15, 2016

Troy L. Nunley
United States District Judge

---

recognizing the bank as a party or a creditor or claimant of the Appellant/Debtor to validate its claim.  The only document known to Appellee is the purchase and assumption agreement in which the predecessor to Pacific Western Bank, formerly known as First California Bank acquired certain assets and of [sic] San Luis Trust Bank from the FDIC acting as receiver.

…

In the year 2010, Debtor [Appellant] was involved in negotiations with a predecessor to the predecessor of Appellee known as San Luis Trust Bank, from whom the Debtor had borrowed $500,000.00.  San Luis Trust Bank declared a default against the Debtor on January 3, 3011 at a time when the Debtor was not in default.  The Debtor subsequently filed a Chapter 11 Petition to remove the receiver … [and the receiver was eventually] … ordered off the property by the bankruptcy court … Upon regaining possession of his property, which was unlawfully occupied for a period of 53 days, Appellant/Debtor began discovering the items subsequently listed on his lawsuit as missing and immediately filed a police report.  San Luis Trust Bank was seized by the FDIC for fraudulent banking activities on February 18, 2011, some 22 days after Appellant/Debtor's Chapter 11 bankruptcy was filed in the Central District.  Certain assets and liabilities of San Luis Trust Bank were then acquired by a bank known as First California Bank.  Nothing in that document would justify or explain how an Order of Coercive Sanctions, which is ultimately very personal in nature could possibly have been acquired by Pacific Western Bank., which subsequently merged with First California Bank on May 31, 2013.